**JERVIS B. WEBB COMPANY,**
Appellant,

v.

**SOUTHERN SYSTEMS, INC., Appellee.**

No. 84–568.

United States Court of Appeals,
Federal Circuit.

Aug. 16, 1984.

Neal A. Waldrop, argued, Troy, Mich., for appellant; Thomas R. Prewitt, Memphis, Tenn. and Christopher J. Webb, Farmington Hills, Mich., on brief.

John R. Walker, III, argued, Memphis, Tenn., for appellee.

Before KASHIWA, BENNETT, and SMITH, Circuit Judges.

KASHIWA, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Western District of Tennessee (Civil Action No. 80–2465–M), entered September 7, 1983. The district court declared that claims 1–12 of appellant's patent, U.S. Patent No. 3,451,352 (the "352 patent") were invalid. The district court, accordingly, dismissed appellant's complaint and entered judgment against appellant. We affirm in part and vacate in part.

### The Invention

Appellant's invention relates to a power and free conveyor for carrying heavy loads such as automobile parts in a factory. The invention is best illustrated by the broadest independent claim of the patent:

1. A conveyor including a track for supporting a load carrier having a main driving dog movable between non-driving and driving position and engageable in the latter position by a pusher of a propelling member, and an auxiliary dog located on the carrier in longitudinally spaced trailing relation to the main dog with respect to the forward direction of carrier movement, characterized by means mounting the auxiliary dog on the carrier for movement between an operative position in which the auxiliary dog is engageable by a pusher and an inoperative position in which the auxiliary dog is not so engageable, means normally urging the auxiliary dog to one of said positions, and cam and follower means mounted on the carrier and on the carrier

supporting track for moving the auxiliary dog to the other of said positions independently of any change in position of the main driving dog.

All nonessential reference numerals are deleted from the drawings in this opinion.

As best shown in Figure 2 of the '352 patent, a load carrier 10 carries a load (unnumbered). Load carrier 10 includes a front trolley 12 and a rear trolley 14. Each trolley has rotary wheels which travel in a track 15 that is comprised of rails 16 and 17, as best shown in Figure 4.

As best shown in Figures 2 and 6, front trolley 12 includes a main driving dog[1] (projection) 18 and a holdback dog 20. Rear trolley 14 includes a supplementary

---

**1.** Dog /'dog/ n, *often attrib* [ME, fr. OE *docga*] * * * 3. a: any of various usu. simple mechanical devices for holding, gripping, or fastening that consist of a spike, rod, or bar * * *.

WEBSTER'S NEW COLLEGIATE DICTIONARY (1979).

driving dog 22. When trolleys 12 and 14 are travelling under the power of forwarding propelling chain 24, they are propelled by pushers 30 which travel on track 25; when trolleys are travelling under the power of receiving propelling member (chain) 32, they are propelled by pushers 34 which travel on track 35.

Both main driving dog 18 and holdback dog 20 are normally in operative (up) positions, as shown by dotted lines in Figure 6. Supplementary dog 22 is normally in an inoperative (down) position, as best shown in Figure 3. It is urged to the inoperative position by a counterweighted nose 52. Holdback dog 20 moves to the inoperative position and supplementary driving dog 22 moves to the operative position at a junction of two power tracks, *e.g.*, forwarding chain 24 and receiving chain 32.

In operation, a pusher 30 catches a main driving dog 18 which is in its normally up position. Pusher 30 is trapped between dog 18 and holdback dog 20, also in its normally up position. As load carrier 10 approaches the junction, a cam member 60 secured to lower track 15 engages follower 56 of dog 22, forcing supplementary dog 22 to its operative position, as best shown in Figure 5. A trailing pusher 30 then catches supplementary dog 22.

In transferring load carrier 10 from forwarding chain 24 to receiving chain 32, pusher 30 first disengages from dog 18 when track 25 diverges from the forward direction. Load carrier 10, however, is still going in the forward direction on track 15 due to a trailing pusher 30 that is still pushing supplementary dog 22. To prevent interference between a pusher 34 of receiving chain 32 (as it tries to catch dog 18) and holdback dog 20, a cam member 64a mounted on track 15, as shown in Figure 2, engages follower pin 54 of dog 20, causing holdback dog 20 to move to an inoperative position. Having engaged main driving dog 18, pusher 34 propels load carrier 10 forward even after the disengagement of trailing pusher 30 with supplementary dog 22.

As carrier 10 crosses the junction, supplementary dog 22 moves to its normally inoperative position when it reaches the end of cam 60, and holdback dog 20 returns to its normally operative position at the end of cam 64a.

For stopping load carrier 10, a carrier stopping device 40 is used, as best shown in Figures 1, 3, and 6. As front trolley 12 approaches stopping device 40, a cam 64b mounted on track 35 cams holdback dog 20 to its inoperative position and a plate of device 40 depresses driving dog 18 to an inoperative position. The engagement of the stopping plate with abutment surface 70 of holdback dog 20 stops the forward movement of load carrier 10.

### District Court Proceeding

Appellant, Jervis B. Webb Company ("Webb"), asserted infringement of claims 1, 3 and 11 of its '352 patent by appellee, Southern Systems, Inc. ("Southern"). Southern, in turn, filed a declaratory judgment counterclaim that asserted invalidity and noninfringement of claims 1–12, all of the claims of the '352 patent. In addition, the district court denied Webb's pre-trial motion to substitute infringement of claim 9 for infringement of claim 11.

After a bench trial, the district court invalidated the claims of the '352 patent on

two grounds. First, claims 1 and 11 were found to have been anticipated by British Patent No. 819,343 (the "British Orwin patent"). Next, claims 1–12 were found to have been obvious in light of the prior art. The district court also denied Webb's post-trial motion to amend the pleadings to conform to trial evidence of infringement of claim 9.

## OPINION

### I

■ Since the obviousness issue is dispositive of this case, we need not and do not reach the anticipation issue. In its obviousness analysis, the district court enunciated several incorrect, albeit harmless, points of law. First, the district court stated that "there is no synergism produced by the combination of old elements of the '352 patent." We, however, have stated several times that synergism is not a necessary element in an obviousness determination. *Gardner v. TEC Systems, Inc.*, 725 F.2d 1338, 1349–50, 220 USPQ 777, 786 (Fed.Cir.1984) (en banc).[2] Since the district court properly analyzed obviousness under the tests mandated by 35 U.S.C. § 103 and *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545 (1966), its reliance on lack of synergism in this case is harmless. *Gardner*, 725 F.2d at 1350, 220 USPQ at 786.

Next, the district court implied that a combination of old elements is less worthy of patent protection than other types of invention. We have also stated numerous times that the conditions for patentability of so-called combination inventions are the same as those for other inventions. *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1566, 220 USPQ 97, 99–100 (Fed.Cir.1983).[3] In light of the district court's *Graham* analysis, we also find this error to be harmless. *Id.*, 721 F.2d at 1566, 220 USPQ at 100.

■ Last, the district court misapplied the presumption of patent validity as enunciated in 35 U.S.C. § 282. The district court stated that since "[t]he most relevant prior art [the British Orwin patent] * * * was not cited by the Patent Office during the prosecution of the application which matured into the '352 patent * * *[,] * * * any presumption of validity which the '352 patent may have had is largely, if not wholly vitiated." We, however, disagree. Regardless of the prior art introduced by the party asserting invalidity, the presumption remains intact. *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 738, 220 USPQ 845, 847–48 (Fed.Cir.1984). Rather, the party asserting invalidity, having offered new prior art, would be more likely to carry the burden of persuasion imposed by section 282.[4] *American Hoist & Derrick*

2. *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1479 n. 4, 221 USPQ 649, 651 n. 4 (Fed.Cir.1984); *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 740, 220 USPQ 845, 849 (Fed.Cir.1984); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360–61, 220 USPQ 763, 771 (Fed.Cir.1984); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1549, 220 USPQ 193, 199 (Fed. Cir.1983); *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1150, 219 USPQ 857, 860 (Fed.Cir.1983); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983); and *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 781, 218 USPQ 673, 677 (Fed.Cir. 1983).

3. *Amstar, supra; Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1546, 221 USPQ 1, 7 (Fed.Cir.1984); *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 961, 220 USPQ 592, 600 (Fed.Cir.1983); *Connell*, 722 F.2d at 1548–49, 220 USPQ at 199 (Fed.Cir.1983); *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1579–80, 219

USPQ 8, 12 (Fed.Cir.1983); *Stratoflex*, 713 F.2d at 1540, 218 USPQ at 880; *Environmental Designs, Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 698, 218 USPQ 865, 870 (Fed.Cir.1983).

4. *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885, 221 USPQ 1025, 1028–29 (Fed.Cir. 1984); *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1574–75, 221 USPQ 929, 930–31 (Fed.Cir.1984); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894, 221 USPQ 669, 674 (Fed.Cir.1984); *Amstar, supra; Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 825, 221 USPQ 568, 573 (Fed.Cir.1984); *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1459, 221 USPQ 481, 486 (Fed.Cir.1984); *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 761, 221 USPQ 473, 479 (Fed.Cir.1984); *RCA Corp. v. Applied Digital Data Sys., Inc.*, 730 F.2d 1440, 1443–44, 221 USPQ 385, 387 (Fed.Cir.1984); *Jones v. Hardy*, 727 F.2d 1524, 1529, 220 USPQ 1021, 1025

*Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1358–60, 220 USPQ 763, 769–71 (Fed.Cir. 1984). In this case, however, the error was harmless since the district court did not shift the burden. *Medtronic,* 721 F.2d at 1567, 220 USPQ at 100.

## II

■ A determination of obviousness is a question of law that is subject to a full and independent review by an appellate court. *Gardner,* 725 F.2d at 1344, 220 USPQ at 782. Such a determination of obviousness must be based on a set of factual inquiries which are mandated by 35 U.S.C. § 103. *Graham, supra.* These factual inquiries cannot be overturned unless they are clearly erroneous. Fed.R.Civ.P. 52(a); *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Each of the fac-

tual inquiries will be discussed separately below.

### A. *Scope and Content of the Prior Art*

The first element of the obviousness test enunciated in *Graham* is scope and content of the prior art. In this regard, the district court discussed thirteen United States and foreign patents all of which except the '645 and '942 patents, *infra,* were not before the examiner during the prosecution of the patent at issue.

The district court found that U.S. Patent No. 3,229,645 (the " '645 patent"), which was considered by the examiner, disclosed a system that is similar to the system at issue, in the manner in which it prevents interference at the junction of two powered tracks. The system of the '645 patent is best illustrated by its Figures 1 and 2:

(Fed.Cir.1984); *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1511, 220 USPQ 929, 939 (Fed.Cir.1984); *Raytheon,* 724 F.2d at 960, 220 USPQ at 599 (Fed.Cir.1983); *Medtronic,* 721 F.2d at 1566–67, 220 USPQ at 100; *Connell,* 722 F.2d at 1549, 220 USPQ at 199; *W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1553, 220 USPQ 303, 313 (Fed.Cir.1983); *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1359, 219 USPQ 473, 478 (Fed.Cir.1983); *Richdel,* 714 F.2d at 1579, 219 USPQ at 11–12; *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1147 n. 2, 219 USPQ 13, 15 n. 2 (Fed.Cir.1983); *Stratoflex,* 713 F.2d at 1534, 218 USPQ at 875–76; *Kalman v. Kimberly-Clark Corp.,* 713 F.2d 760, 773 n. 3, 218 USPQ 781, 790 n. 3 (Fed.Cir.1983); *SSIH Equip. S.A. v. USITC,* 718 F.2d 365, 374–75, 218 USPQ 678, 687 (Fed.Cir.1983).

As load carrier 28b approaches the junction, a portion 46 of forwarding chain track 12 is lowered with respect to the load carrier, causing a trailing pusher 19 to engage supplementary driving dog 42. After front trolley 30 has been engaged by a pusher 25 of the receiving chain, supplementary dog 42 disengages from its pusher due to the return of forwarding chain track 22 to its normal spacing 44. In addition, the '645 patent discloses a stopping technique that uses a stopping plate and the forward face of the holdback dog.

The district court then found that the most relevant piece of prior art, the British Orwin patent, was not considered by the examiner. As best shown by its Figures 4 and 5, *infra,* the British Orwin patent discloses a power chain 11 on a track 10. A load carrier or trolley 13 travels on a track 12 that parallels track 10. The track spacing between tracks 10 and 12 is constant or uniform. Power chain 11 has a pair of pivotable dogs, *i.e.,* main drive dog 22 and auxiliary or holdback dog 23 which are moved out of engagement with member 17 of trolley 13 by cams 38. When dogs 22 and 23 are cam actuated to an operative position, they engage member 17 and propel trolley 13. When dogs 22 and 23 are in an inoperative position, they do not engage member 17. Dogs 22 and 23 are moved into one position by cams 38 and into the other position by their own counterweights.

Dogs 22 and 23 are shown in the drawings as being pivotally mounted from power chain 11, and member 17 as mounted on trolley 13. The specification, however, provides that the drive transmitting means (*i.e.,* the dogs) may be placed, in the alternative, on trolleys 13. The British Orwin Patent, thus, adopts the concept, in a power and free conveyor, of using pivotal cam-actuated dogs while maintaining a constant or uniform spacing between the tracks.

FIG. 4

FIG. 5

Fig. 1.

U.S. Patent No. 2,883,942 (the "'942 patent"), also before the examiner, discloses several load carriers or trolleys 2 which travel on a track 1, as best shown in Figure 1. Each of trolleys 2 includes pivotal dogs, *i.e.*, main drive dog 26 and auxiliary or holdback dog 27, as best shown in Figure 3. Chain 15 carries pusher member 20 which engages main drive dog 26 to move trolley 2. Holdback dog 27 has a cam follower 33 such that when it engages cam 40, it moves holdback dog 27 up and out of engagement with pusher member 20. Holdback dog 27 has a lip 30 which extends beneath another lip 29 that projects from main drive dog 26 so that when holdback dog 27 is cammed up, lip 30 cams lip 29 such that main drive dog 26 is disengaged from pusher member 20. In Figure 5, there is shown an optional arrangement in which the drive and driven elements are reversed. Dogs 69 and 70 are pivotally mounted on a chain 74 rather than on trolley 50, and are, in addition, not inter-engaged with one another.

The district court also discussed several additional patents which disclosed cam-actuated dogs and counterweighted dogs.

### B. *Level of Ordinary Skill in the Art*

The second element of the *Graham* test is the level of ordinary skill in the art. The district court found that a person of ordinary skill in this particular field would have been a conveyor designer.

### C. *Differences Between the Claims and the Prior Art*

The third element of the *Graham* test is a determination of the differences between the claims at issue and the prior art. In light of our discussion in relation to declaratory judgment jurisdiction, section III, *infra*, only claims 1, 3, 4, 8, 9 and 11 of the '352 patent are reviewed. These enumerated claims are listed in the APPENDIX that is attached to the end of this opinion.

The district court found that claim 1 claimed a conveyor in which the auxiliary dog may be cammed to operative and inoperative positions for engagement with the pusher.

The district court found that the only difference between claim 1 and the '645 patent was that instead of moving the auxiliary dog up and down, the pusher in the '645 patent was moved up and down relative to the auxiliary dog by varying the track spacing.

In addition, the only difference between claim 1 and the embodiment shown in Figure 3 of the '942 patent was that the auxiliary dog of claim 1 is recited as being movable between its positions, *i.e.*, "independently of any change in position of the

main driving dog." This reference to the independent movement of the auxiliary dog with respect to the main driving dog, was added during prosecution to distinguish claim 1 from the '942 patent. Nonetheless, the '942 patent showed in its Figure 5 the general concept of a pair of movable dogs in which the auxiliary dog moves independently of the main driving dog. Moreover, other prior art patents disclosed independent movement between the main driving dog and the holdback dog or auxiliary dog.

■ Further, the district court found that all of the elements of claim 1 were disclosed in the British Orwin patent. The elements of the British Orwin patent drawing were in the same relationship as those of claim 1 with the exception that the drive and driven elements were reversed. Such a reversal of the drive and driven elements, however, was taught in the British Orwin patent itself and cannot form a basis for a holding of unobviousness. Thus, claim 1 was correctly considered obvious in light of the British Orwin patent.

Claim 3 also depended from claim 1 and defined the auxiliary dog as a supplementary driving dog which is normally urged to an inoperative position. The district court found that this additional limitation on the supplementary driving dog was disclosed in the '645 patent. Supplementary driving dogs 40 and 42 of the '645 patent, however, were normally inoperative in relation to the pushers and were rendered operative by moving the pushers down into overlapping relationship with them. Since the alternative of overlapping the pushers with the dogs by camming the dogs was known in the prior art, *e.g.,* the British Orwin patent, the limitation of the '352 patent was disclosed in the combination of such prior art with the '645 patent.

Claim 8 depended from claim 4, with the auxiliary dog being defined as a supplementary driving dog which is normally urged to an inoperative position. The district court found that this additional limitation was the same as that of claim 3 and was similarly disclosed in the '645 patent.

Claim 9 depended from claim 8 and a carrier transfer zone or junction was claimed. The supplementary driving dog was defined as being in an operative position when the carrier is transferred through the junction. Again, the district court found that these additional elements were disclosed in the '645 patent in which the supplementary dog is in its operative position relative to the pusher when the carrier is being transferred.

Claim 11 also depended from claim 1, with the means that normally urges the auxiliary dog to one of the positions being defined as a counterweight portion. This additional element was found to have been disclosed in the British Orwin patent.

## D. Evidence of Nonobviousness

■ In addition to the factual inquiries, the district court heard and considered expert testimony regarding the nonobviousness of the '352 invention. *McGill Inc. v. John Zink Co.,* 736 F.2d 666, 675, 221 USPQ 944, 950–51 (Fed.Cir.1984). The district court, however, did not find the testimony of Webb's expert to be credible or persuasive. Moreover, the district court also considered objective evidence of nonobviousness. *Graham, supra; Jones v. Hardy,* 727 F.2d 1524, 1530–31, 220 USPQ 1021, 1026 (Fed.Cir.1984); *In re Sernaker,* 702 F.2d 989, 996, 217 USPQ 1, 7 (Fed.Cir. 1983). It did not find the evidence proferred by Webb on such objective indicia as pioneer invention, commercial success, etc. to be persuasive, nor do we. We, therefore, hold that the *Graham* and other factual findings are not clearly erroneous.

## E. Conclusion As To Obviousness

The district court concluded that the claims of the '352 patent were invalid for obviousness. Webb, in this appeal, contends that the district court misconstrued the claims by its failure to consider the patent specification and the prosecution history. This contention, however, is meritless. Webb, in essence, is improperly attempting to incorporate into the claims limitations disclosed in its specification. *Envi-*

*ronmental Designs, Ltd. v. Union Oil Co. of California,* 713 F.2d 693, 699, 218 USPQ 865, 871 (Fed.Cir.1983). In addition, Webb is also attempting to avoid invalidity by reading into its broad claims limitations which are present in narrow claims. *Kalman v. Kimberly-Clark Corp.,* 713 F.2d 760, 770, 218 USPQ 781, 788 (Fed.Cir.1983).

Contrary to Webb's contention, the district court properly analyzed each of the claimed inventions as a whole in light of the prior art. *Carl Schenck, A.G. v. Nortron Corp.,* 713 F.2d 782, 785, 218 USPQ 698, 700 (Fed.Cir.1983); *In re Kaslow,* 707 F.2d 1366, 1373, 217 USPQ 1089, 1094 (Fed. Cir.1983). In addition, Southern has met its burden of proving the facts leading to the conclusion of obviousness of the claimed inventions by clear and convincing evidence. *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.,* 730 F.2d 1452, 1459, 221 USPQ 481, 486 (Fed.Cir.1984).

■ In light of the *Graham* inquiries and the evidence in its entirety, the district court held, and we agree, that the claimed inventions of the '352 patent would have been obvious. *Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1573–74, 220 USPQ 584, 589–90 (Fed.Cir.1984). Although we modified the trial court's language in relation to aspects of law in section I, we also hold that claims 1, 3, 4, 8, 9 and 11 are invalid.

### III

In addition to the obviousness issue, Webb also argues that the district court erred in holding claims 2, 5–7, 10, and 12 invalid because there was no case or controversy between the parties regarding these claims. We agree.

Although Southern did file a declaratory judgment counterclaim, *Altvater v. Freeman,* 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943), that asserted the invalidity of all of the '352 claims, the evidence in the record is inadequate to indicate that there was a case or controversy in relation to claims 2, 5–7, 10 and 12.

■ Declaratory judgment jurisdiction pursuant to 28 U.S.C. § 2201,[5] must be predicated on the existence of a case or controversy between the parties. *Altvater,* 319 U.S. at 363, 63 S.Ct. at 1117; *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). In addition, the case or controversy requirement for declaratory judgment jurisdiction has been defined to be the same as the case or controversy requirement in the constitutional sense. *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Moreover, such a case or controversy must exist as of the date of the filing of the declaratory judgment action.[6] *See International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1217, 206 USPQ 772, 781 (7th Cir.1980).

■ The case or controversy requirement for a patent invalidity declaratory judgment action requires the presence of two elements. First, the defendant in such an action must have engaged in conduct that created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question. *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 879, 219 USPQ 197, 202 (Fed.Cir.

5. Section 2201, in pertinent part, states:

§ *2201. Creation of remedy*

In a case of actual controversy within its jurisdiction, * * *, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. * * *

6. Although we need not and do not reach the question whether the establishment of declaratory judgment jurisdiction at the time of the filing of the action is sufficient to sustain the case or controversy requirement to the conclusion of that action, we note that the Supreme Court stated: "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *see C. Van Der Lely N.V. v. F.lli Maschio S.n.c.,* 561 F.Supp. 16 (E.D.Ohio 1982).

1983); *see International Harvester Co.,* 623 F.2d at 1210, 206 USPQ at 775. Next, the plaintiff seeking a declaration of invalidity must have actually produced the accused device or have actually prepared to produce such a device. *See Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.,* 439 F.2d 871, 875, 168 USPQ 737, 740 (1st Cir.1971); *International Harvester, supra.* Moreover, the existence of a case or controversy must be evaluated on a claim-by-claim basis. *See Emerson v. National Cylinder Gas Co.,* 251 F.2d 152, 157–58, 116 USPQ 101, 104–5 (1st Cir.1958); *Lam, Inc. v. Johns-Manville Corp.,* 206 USPQ 452 (D.Colo.1979), *aff'd,.* 668 F.2d 462, 213 USPQ 1061 (10th Cir.), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2298, 73 L.Ed.2d 1302 (1982). *See generally* 5 D. Chisum, *Patents* § 21.02[1][C] (1984). Further, where, as here, the declaratory defendant (patentee) has denied the factual allegations that allegedly support the existence of case or controversy, the declaratory plaintiff must prove the existence of facts underlying such allegations. *See Grafon Corp. v. Hausermann,* 602 F.2d 781, 784, 203 USPQ 166, 168–69 (7th Cir.1979).

In the instant case, declaratory plaintiff Southern fails to meet its burden regarding the second element of the case or controversy requirement in a patent invalidity declaratory judgment suit. Since Webb's claims 2, 5–7, 10 and 12 all relate to conveyors employing holdback dogs which may be cammed to operative or inoperative positions, Southern must present evidence indicating that it had actually produced a device that uses cammable holdback dogs or have actually prepared to produce such a device at the time it filed its declaratory judgment counterclaim. The evidence proffered by Southern in this regard points in the opposite direction. Mr. Linton, president of Southern, testified, repeatedly, that

Southern does not and did not use cammable holdback dogs in its devices. At one point in his testimony, Mr. Linton stated: "Southern Systems doesn't use this [cammable holdback dogs], never have used this, really has no intention of using it for all together different reasons than might be thought."

 A judgment, such as the one in the instant case, that adjudicated less than all of a patentee's claims may operate as collateral estoppel under certain circumstances to prevent that patentee from later charging the alleged infringer or a third party with infringement of the nonasserted claims. This result is suggested by the Supreme Court's decision regarding collateral estoppel in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). *Bourns, Inc. v. United States,* 210 Ct.Cl. 642, 537 F.2d 486, 199 USPQ 256 and 187 USPQ 174 (1976); *Westwood Chemical, Inc. v. United States,* 207 Ct.Cl. 791, 525 F.2d 1367, 187 USPQ 656 and 186 USPQ 383 (1975); *see Plastic Container Corp. v. Continental Plastics of Okla., Inc.,* 607 F.2d 885, 894, 203 USPQ 27, 34 (10th Cir.1979) (Miller, J., sitting by designation), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980) (collateral estoppel may apply, under certain circumstances, to previously unadjudicated claims).

 Since Webb only asserted and litigated the infringement of claims 1, 3, 4, 8, 9 and 11,[7] and the evidence in the record is inadequate to indicate the existence of a case or controversy regarding the remaining claims in the invalidity declaratory judgment counterclaim, we vacate that portion of the district court's holding regarding the invalidity of claims 2, 5–7, 10 and 12.[8]

---

**7.** Since claim 9 is dependent on claims 4 and 8, all three claims were litigated by Webb in order to support its post-trial motion to amend the pleadings to conform the evidence to its assertion that claim 9 rather than claim 11 was infringed. A judgment can be entered regarding claims that were actually litigated without

objection. *See Perfection-Cobey Co. v. City Tank Corp.,* 597 F.2d 419, 202 USPQ 161 (4th Cir. 1979).

**8.** This holding is applicable only to those instances where the declaratory judgment plaintiff, responding to an initial complaint by the

## IV

Further, Webb argues that the district court committed reversible error when it denied Webb's pre-trial (Fed.R.Civ.P. 15(a)) and post-trial (Fed.R.Civ.P. 15(b)) motions to amend the pleadings to assert the infringement of claim 9 instead of claim 11. The standard of review for both types of denials is abuse of discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Colony Foods, Inc. v. Sagemark, Ltd.*, 735 F.2d 1336, 222 USPQ 185, 187 (Fed.Cir.1984); *see Save Lake Washington v. Frank*, 641 F.2d 1330, 1340 (9th Cir.1981). In this case, we fail to see where the district court abused its discretion and accordingly cannot but affirm its decision to retain claim 11 and not claim 9 in Webb's complaint.

### Conclusion

The district court's holding that claims 1, 3, 4, 8, 9 and 11 of appellant's '352 patent were invalid for obviousness is affirmed. Its holding regarding the invalidating of claims 2, 5–7, 10 and 12 is vacated. The district court's denials of appellant's motions to amend the pleadings are affirmed. Since these issues are dispositive of this case, we need not and do not reach other issues.

*AFFIRMED–IN–PART* and *VACATED–IN–PART*

declaratory defendant that asserted the infringement of less than all of his claims, counterclaimed for an invalidity declaration but failed to meet the case or controversy requirement regarding the invalidity of all of the claims. This holding does not preclude the issuance of a declaratory judgment that all claims are valid or invalid in response to, *inter alia,* (1) the filing of a declaratory judgment complaint asserting the invalidity of all of a patentee's claims in response to general accusations of infringement by the patentee, *e.g.,* general accusations of infringement in cease-and-desist letters (*see Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 89, 137 USPQ 235, 236 (2d Cir.1963)); (2) the filing of a declaratory judgment counterclaim asserting the invalidity of all of patentee's claims in response to a complaint that asserted the infringement of all of the claims (*see Ster-

## APPENDIX

3. A conveyor as claimed in claim 1 wherein the auxiliary dog is a supplementary driving dog normally urged to an inoperative position.

4. A conveyor as claimed in claim 1 further characterized by the auxiliary dog being pivotally mounted on an axis extending transversely of the carrier, and wherein the follower is secured to the auxiliary dog and extends laterally thereof, the cam being secured to the carrier supporting track and including an actuating portion extending angularly to the carrier supporting track for moving the dog to the other of said positions in response to engagement of the follower therewith, and including a retaining portion extending parallel to the carrier supporting track for holding the dog in the other of said positions along a desired portion of the track.

8. A conveyor as claimed in claim 4 wherein the auxiliary dog is a supplement [sic] driving dog normally urged to an inoperative position.

9. A conveyor as claimed in claim 8 further characterized by a transfer zone at which a carrier is transferred from a forwarding to a receiving propelling member, and the cam being arranged to position and hold the supplementary driving dog in operative position in advance of the transfer zone for engagement by a pusher of the forwarding propelling member.

*ling Aluminum Prod., Inc. v. Bohn Aluminum & Brass Corp.*, 298 F.2d 538, 132 USPQ 365 (6th Cir.1962)); or (3) the filing of a declaratory judgment counterclaim asserting the invalidity of all of a patentee's claims in response to an accusation or a complaint that asserted the infringement of less than all of the claims where the declaratory plaintiff is able to meet both of the case or controversy requirements for all of the claims (*see Plastic Container Corp. v. Continental Plastics of Okla., Inc.*, 607 F.2d 885, 891 n. 7, 203 USPQ 27, 32 n. 7 (10th Cir.1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980); *Flakice Corp. v. Liquid Freeze Corp.*, 131 F.Supp. 599, 106 USPQ 299 (N.D.Cal.1955)). Nor does the present holding preclude a declaratory judgment that all claims are invalid when the proof at trial establishes a basis, *e.g.,* fraud, derivation, for such judgment.

11. A conveyor as claimed in claim 1 where the means normally urging the auxiliary dog to one of said positions comprises a counterweight portion provided on the dog.