34 F.3d 1080
 32 U.S.P.Q.2d 1835
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
SYNBIOTICS CORPORATION, Plaintiff-Appellant,
v.
The REGENTS OF the UNIVERSITY OF CALIFORNIA and Idexx
Laboratories, Inc., Defendants-Appellees.
SYNBIOTICS CORPORATION, Plaintiff-Appellant,
v.
IDEXX LABORATORIES, INC., Plaintiff-Appellee.
 Nos. 93-1253, 94-1079.
 United States Court of Appeals, Federal Circuit.
 Aug. 29, 1994.
 
 Before ARCHER, Chief Judge, NEWMAN, and SCHALL, Circuit Judges.
 SCHALL, Circuit Judge.
 
 DECISION
 
 1
 Twice Synbiotics Corporation has filed an action seeking declaratory relief with respect to U.S. Patent No. 5,118,602 ('602 patent), which is owned by the Regents of the University of California (UC), and which is exclusively licensed to IDEXX Laboratories, Inc. (IDEXX). Twice the United States District Court for the Southern District of California has dismissed the action, without prejudice, for want of a justiciable controversy. Synbiotics Corp. v. Regents of the University of California, No. 92-1824GT (S.D.Cal. Feb. 16, 1993) ("Synbiotics I "); Synbiotics Corp. v. IDEXX Labs., Inc., No. 93-212GT (S.D.Cal. Apr. 7, 1993) ("Synbiotics II "). In the second suit, the district court imposed sanctions against Synbiotics for disregarding the court's order in the first case and failing to allege new facts that would support jurisdiction.
 
 
 2
 Synbiotics appeals the dismissal in each suit, as well as the imposition of sanctions in the second. Because we agree with the district court that Synbiotics failed to meet its burden in showing the existence of a justiciable controversy at the time each of the two suits was filed, we affirm both dismissals. Further, because there was not an abuse of discretion, we affirm the imposition of sanctions in the second suit. Finally, however, we do not find the appeal of the second suit to be frivolous and thus deny IDEXX's request under Rule 38, Fed.R.App.P., for attorney fees and double its costs in conjunction with that appeal.
 
 DISCUSSION
 I.
 
 3
 UC is the assignee of the '602 patent, which claims methods for diagnosing feline immunodeficiency virus (FIV) infections, and under which IDEXX is exclusively licensed. On November 23, 1992--the same day Synbiotics introduced an FIV diagnostic product on the market--Synbiotics brought a complaint against UC, which was later amended to add IDEXX as a defendant, in the United States District Court for the Southern District of California. In the lawsuit, Synbiotics sought a declaration that the '602 patent was invalid, unenforceable, and not infringed by Synbiotics' diagnostic product. In support of its contention that the controversy was one that was justiciable, Synbiotics relied upon the following conduct of the defendants: (1) UC's grant of an exclusive license to IDEXX; (2) UC's refusal to grant Synbiotics a license; (3) IDEXX's development of a market for the patented process; and (4) IDEXX's creation of a fiercely competitive and contested commercial relationship in the veterinary diagnostic market.[1] Upon defendants' motion pursuant to, inter alia, Rule 12(b)(1), Fed.R.Civ.P., the district court dismissed the suit without prejudice on February 16, 1993, for want of a justiciable controversy. The court held that the defendants' conduct was insufficient to cause Synbiotics to have an apprehension of an infringement suit that was objectively reasonable.
 
 
 4
 On February 10, 1993--six days before the district court dismissed the first suit--Synbiotics filed a second suit in the same court, this time against IDEXX alone. In one count of this suit, Synbiotics sought a declaration that the '602 patent is invalid, unenforceable, and therefore not infringed. In another count, Synbiotics sought a declaration that Synbiotics' animal heartworm advertising was not false or misleading.[2] Shortly after the filing of the suit, the parties settled the false advertising count. This advertising dispute, in addition to other evidence alleged to show a fiercely competitive and contested commercial relationship between the parties, was relied upon by Synbiotics as additional evidence--over and above what had been present in the first suit--that the patent declaratory judgment count set forth a justiciable controversy. On IDEXX's motion pursuant to Rule 12(b)(1), Fed.R.Civ.P., the district court on April 7, 1993, dismissed, without prejudice, the patent declaratory judgment count of the suit for want of a justiciable controversy. As in the first suit, the court held that IDEXX's conduct was insufficient to cause Synbiotics to have an apprehension of an infringement suit that was objectively reasonable. The court also imposed sanctions pursuant to Rule 11, Fed.R.Civ.P., on the ground that, in bringing the second suit, Synbiotics had basically disregarded the court's order issued in the first suit and had failed to allege new facts that would support jurisdiction.
 
 
 5
 On May 27, 1993--just over six months after Synbiotics introduced its competing diagnostic product and less than two months after the district court's second dismissal--UC and IDEXX sued Synbiotics in the same court for infringement of the '602 patent.
 
 II.
 
 6
 The power of the federal judiciary is limited to "cases" and "controversies." U.S. Const. art. III. This constitutional limitation is given due regard by the Declaratory Judgment Act of 1934, which by its terms limits the declaratory remedy to "case[s] of actual controversy." 28 U.S.C. Sec. 2201 (1988). "The requirement of actual controversy encompasses concepts such as ripeness ... and the prohibition against advisory judicial rulings...." BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 977, 28 USPQ2d 1124, 1126 (Fed.Cir.1993). In the patent context, a prerequisite for finding an "actual controversy" which has evolved is that there must be "an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit." Id. at 978, 28 USPQ2d at 1126. In other words, there must have been what we have referred to as "extra-judicial patent enforcement," which would indicate that the conflict is real and immediate. See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734-35, 6 USPQ2d 1685, 1688 (Fed.Cir.1988); see also BP Chemicals, 4 F.3d at 978, 28 USPQ2d at 1126.
 
 
 7
 In the district court, Synbiotics had the burden of proving, by a preponderance of the evidence, the facts supporting the existence of an actual controversy. Jervis B. Webb Co. v. Southern Sys., Inc., 742 F.2d 1388, 1399, 222 USPQ 943, 949 (Fed.Cir.1984). It was Synbiotics' failure to prove that its apprehension of an infringement suit was objectively reasonable that provided the basis for the district court's dismissal of each of the two suits brought by Synbiotics. Synbiotics I, at 3-4; Synbiotics II, at 4-5. We review the district court's fact finding under a clearly erroneous standard. Fed.R.Civ.P. 52(a); BP Chemicals, 4 F.3d at 978, 28 USPQ2d at 1127. Whether an actual controversy exists upon particular facts, however, is a question of law which we review de novo. Id. Nevertheless, the district court's "view of the legal effect of the fact pattern before it is not to be lightly disregarded." Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 634, 19 USPQ2d 1545, 1547 (Fed.Cir.) (quoting Arrowhead, 846 F.2d at 735, 6 USPQ2d at 1688), cert. denied, 112 S.Ct. 658 (1991).
 
 III.
 
 8
 The fundamental infirmity with Synbiotics' jurisdiction plea is that, at the time Synbiotics filed each of its lawsuits, there was not yet a ripe controversy. See BP Chemicals, 4 F.3d at 977, 28 USPQ2d at 1126. The non-ripeness of the controversy is illustrated by the fact that Synbiotics offered absolutely no evidence that UC and IDEXX engaged in extra-judicial enforcement of the patent. See Arrowhead, 846 F.2d at 734-35, 6 USPQ2d at 1688. First, there was no evidence that, prior to Synbiotics' lawsuits, either UC or IDEXX had ever threatened to sue Synbiotics for infringement of the '602 patent. See id. at 733, 737, 6 USPQ2d at 1686, 1690 (patentee's letter to the declaratory judgment plaintiff indicating the patentee's "express intent to enforce its patent rights by litigation"). Next, there was no evidence that either UC or IDEXX had sued parties other than Synbiotics on the '602 patent. See id. at 733, 737, 6 USPQ2d at 1686, 1690 (action by the patentee against third parties that involved the same patent as was involved in the later-filed declaratory judgment action). Also, there was no evidence of any dispute between the parties that, although not a dispute over patent infringement per se, related to the technology generally covered by the '602 patent. See Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955, 3 USPQ2d 1310, 1312 (Fed.Cir.1987) (patentee's state court proceeding against declaratory judgment plaintiff involving trade secret misappropriation of the same technology covered by the patents in the declaratory judgment suit). In addition, there was no evidence that either UC or IDEXX ever demanded that Synbiotics cease its activities, or that they demanded royalties or damages. See Arrowhead, 846 F.2d at 733, 6 USPQ2d at 1686 (patentee's letter to the declaratory judgment plaintiff demanding that patentee immediately cease activity that patentee believed to be an infringement). Finally, there was no evidence that either UC or IDEXX had ever communicated a claim of infringement to Synbiotics' customers. See id. at 733, 737, 6 USPQ2d at 1686, 1690 (Patentee by letter informed a customer of the declaratory judgment plaintiff that the plaintiff "is not licensed to use our process [covered by the patent at issue in the declaratory judgment action] and we would therefore consider any use a direct patent infringement." (quoting patentee's letter)). Synbiotics is asking for an unprecedented and unwarranted extension of federal court jurisdiction, which we are unable to grant.
 
 IV.
 
 9
 With respect to the district court's imposition of Rule 11 sanctions, Synbiotics argues--contrary to what was stated by the court in its opinion--that its second suit did in fact allege additional facts that were not included in the first suit. In this regard, Synbiotics points to the additional evidence which we have noted above. We review a district court's imposition of sanctions for an abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 404 (1990) ("Deference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them."); New Idea Farm Equip. Corp. v. Sperry Corp., 916 F.2d 1561, 1568, 16 USPQ2d 1424, 1430 (Fed.Cir.1990).
 
 
 10
 The district court did not abuse its discretion in imposing sanctions. Although the evidence is not specifically mentioned by the court in its opinion, the court did state that it considered all the moving papers and replies. Even in light of the additional evidence, it could be said, as the district court did, that Synbiotics provided no new facts bearing on the jurisdiction issue, given that the additional evidence had little or no bearing on IDEXX's intent to sue for patent infringement (i.e., the ripeness of the controversy). As such, the district court did not abuse its discretion when it imposed sanctions upon Synbiotics for violating the court's previous order.
 
 
 11
 We do not go so far as to say that Synbiotics' appeal is frivolous, however. Although it is somewhat of a stretch, the new evidence relied upon in the second suit (the advertising dispute and other evidence of contentious relations between the parties) could be said to have some marginal relevance to the issue of the intent of UC and IDEXX to enforce the '602 patent, which the district court stated was the focus of the jurisdictional issue. For example, IDEXX's letter regarding false and misleading advertising could be said to indicate that where IDEXX feels its legal rights have been violated, it has no qualms about enforcing its rights. This additional evidence could not have been addressed in the appeal of the first dismissal.
 
 
 
 [1]
 The evidence Synbiotics relies upon to prove the "fiercely competitive and contested commercial relationship" was not before the court in the first lawsuit, although proof of such was offered in the second lawsuit
 
 
 [2]
 Prior to February 8, 1993, Synbiotics had been advertising its canine heartworm diagnostic products in a manner that IDEXX believed was false and misleading. On February 8, 1993, IDEXX's attorney sent Synbiotics' attorney a letter that pointed this out. IDEXX demanded immediate cessation of the advertising and a written response in five days