38 F.Supp.2d 783 (1998)
Ronald S. DEICHMANN and Usher's Waterworks, Inc., Plaintiffs,
v.
The BOEING COMPANY, Defendant.
No. 4:97CV01913-SNL.
United States District Court, E.D. Missouri, Eastern Division.
October 14, 1998.
*784 Henry W. Cummings, Henry W. Cummings, St. Charles, MO, for Usher's Waterworks, Incorporated, plaintiff.
Robert G. Lancaster, Associate, David A. Roodman, Daniel A. Crowe, Associate, Bryan Cave LLP, St. Louis, MO, for Boeing Company, The dba Boeing Defense and Space Group fka McDonnell Douglas Corporation, defendant.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on Defendant the Boeing Company's Motion to Dismiss Counts II and IV of Plaintiffs' Third Amended Complaint (# 53) filed August 4, 1998.

Background
Plaintiffs filed their Third Amended Complaint (# 34) in four counts alleging breach of a non-disclosure contract and breach of a prototype construction contract, and making a claim for correction of inventorship or an alternative claim for declaratory judgment. Defendant filed this motion to dismiss plaintiffs' claim for breach of the prototype construction contract and the declaratory judgment claim.
The transaction underlying this lawsuit involves an alleged agreement between plaintiff Usher's Waterworks (Usher's) and the McDonnell Douglas Corporation (MDC), defendant Boeing's predecessor in interest. Plaintiffs claim that sometime during 1989, MDC contacted Usher's requesting information regarding Usher's development of laminar flow nozzles. Usher personnel agreed to meet with MDC upon the condition that the parties would enter a confidentiality agreement concerning disclosure of information by Usher's to MDC.[1]
According to the complaint, the meeting went well enough between the parties that in October, 1989, MDC sent Usher's a "Request for Quotation" regarding the development *785 of two prototype nozzles. That request included an assurance by two MDC officials that in the event of successful development, further terms could be discussed regarding Phases II and III. Usher's apparently sent a counter-offer to produce only one prototype nozzle. It is not clear from the complaint whether or not Usher's ever delivered that prototype nozzle. In their factual allegations section, plaintiffs allege that "Plaintiff Ronald S. Deichmann specifically recalls first conceiving, then constructing and disclosing to MDC personnel the concept of introducing water in a radial direction...."[2] In Count II, plaintiffs again allege that the "concepts of Usher's Confiential [sic] Information including introducing water in a radial direction inwardly ... was Usher's Confiential [sic] Information which was disclosed orally and in in [sic] at least one prototype delivered to MDC by Uhser's [sic] by Ronald S. Deichmann." The spelling and grammar of the complaint make it difficult for the court to discern whether or not actual prototypes were ever delivered to MDC, but as defendant has filed no counterclaim for breach, the Court will assume that at least one prototype was in fact delivered.
After submitting the first prototype, plaintiffs claim that they never heard from MDC again. Plaintiffs allege that MDC ultimately applied for and received a patent for some sort of laminar flow system which benefitted from the concepts in the prototype nozzle. Based on Mr. Deichmann's claim that he specifically recalls conceiving this idea, plaintiffs allege that Mr. Deichmann's name was wrongly omitted from the patent application. Now plaintiffs seek damages, claiming MDC breached the production contract provisions that they should ultimately discuss the terms of Phases II and III of the nozzle project,[3] and they seek a declaratory judgment that Mr. Deichmann's name should be added to the patent.

Discussion
This Court is bound by a stringent standard in passing on a motion to dismiss. The Court should not dismiss a complaint for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must view the complaint in the light most favorable to the plaintiff and should not dismiss it merely because the Court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir.1982). "Thus, as a practical matter, a dismissal under rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox, 676 F.2d 332, 334 (8th Cir.1982).
The plaintiffs in this case have appended to their Opposition to Defendant's Motion *786 to Dismiss certain documents outside the scope of the pleadings. A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) "must be treated as a motion for summary judgment when matters outside the pleadings are presented and not excluded by the trial court." Woods v. Dugan, 660 F.2d 379, 380 (8th Cir.1981) (per curiam). When matters outside the pleadings are presented on a motion to dismiss, the court may either treat the motion as one to dismiss and exclude the matters outside the pleadings, or treat the motion as one for summary judgment and provide the parties with notice and an opportunity to provide further materials. See Gibb v.. Scott, 958 F.2d 814, 816 (8th Cir.1992); McDonnell Douglas Corp. v. Sci Tech., Inc., 933 F.Supp. 822, 826 (E.D.Mo.1996). In this case, there are such significant problems on the face of plaintiffs' pleadings that the Court chooses to disregard the matters outside the pleadings and treat the motion as a motion to dismiss.

I. Breach of Prototype Production Contract

In this case, defendant claims that the plaintiffs have failed to allege in Count II of their complaint the basic elements of an enforceable contract. Rather, the defendant argues, plaintiffs have pointed to an unenforceable "agreement to agree" upon the project's progression into Phases II and III. This failure, the defendant argues, constitutes the kind of insuperable bar which will lead to the dismissal of a claim. The Court agrees.
In order to state a claim for relief in a breach of contract action under Missouri law, the plaintiff must allege: (1) an agreement between parties capable of contracting; (2) mutual obligations arising thereunder with respect to a definite subject matter; (3) a valid consideration; (4) part performance by one party and prevention of further performance by the other; and (5) damages measured by the contract and resulting from its breach. Scher v. Sindel, 837 S.W.2d 350, 354 (Mo.Ct.App. 1992). An agreement to agree at some time in the future "is a nullity." Jenks v. Jenks, 385 S.W.2d 370, 376 (Mo.Ct.App. 1964). In general, courts do not create contracts for the parties where there is no evidence of a meeting of the minds as to essential terms. See United States v. 518.77 Acres of Land, 545 F.Supp. 1246, 1247 (W.D.Mo.1982).
In this case, there is no such indication of a meeting of the minds as to the progression through Phases II and III. The Court assumes that plaintiffs in fact delivered the prototype discussed in the forms exchanged by the parties and submitted to the Court as appendices to the complaint. However, there follows no presumption that this constituted the successful development contemplated in the original Request for Quotation. In fact, that Request outlined a schedule to be followed throughout the proposed Phases. Prior to the initiation of Phase II, plaintiffs were to build a second nozzle, and undergo trial production usage of this second nozzle for two weeks. However, in its counterproposal, Usher's only agreed to build the first nozzle. Furthermore, the very first paragraph of the Request for Quotation stated that MDC "would like this to be a phased approach with each phase being quoted separately as [the parties] proceed through the development process." Once the development process broke down, plaintiffs were left with an unenforceable agreement to agree. Under Missouri law, this is a nullity.
Plaintiffs argue in their Opposition to Defendant Boeing's Motion to Dismiss that substantive agreement as to the material terms of Phases II and III was not necessary. Rather, they argue, "the same prices and delivery interval followed in Phase I would be appropriate for the Phase II Pilot Production because the numer [sic] of nozzles needed for this Phase was not significantly more than for Phase I." Plaintiffs further urge the Court that "Phase III Commercial Production prices and delivery could bee [sic] pro *787 rated, with a reasonable delivery schedule." Plaintiffs argue that the Uniform Commercial Code suggests such a result, however, Plaintiffs do not point the Court towards any specific provisions of the Code, nor do plaintiffs provide any case law supporting their position.
The Court disagrees that the gap-filler provisions of the U.C.C. can be used to provide such detailed and essential terms of a contract as price and delivery date when no agreement as to whether to even proceed has been reached. The Court further rejects plaintiffs' cavalier proposal that the Court extrapolate all terms of the production agreement from the terms of the prototype development.
First, the Court finds surprising plaintiffs' assertion that the numbers of nozzles called for in Phases II and III did not differ significantly from the number called for in Phase I. MDC originally ordered two prototype nozzles in Phase I. For one reason or another, Usher's declined to produce more than one prototype. In Phase II, MDC would have required eight nozzles. If Usher's could not produce two nozzles in Phase I, there is no reason for the Court to assume that they would have been willing or able to produce eight in Phase II, had the parties ever agreed to proceed to Phase II. Since the parties never even advanced to Phase II, there is really no reason for the Court to speculate as to what terms they would have come to in Phase III had they ever reached that stage.
Second, there is no reason to believe that the cost of production of the developed nozzles in Phases II and III would be comparable to the cost of the prototype. The Phase II  Pilot Production described in the Request for Quotation included further design enhancements and final design review and MDC approval before two pilot nozzles would be built by Usher's. After those two pilot units were built, MDC would have performed further tests before requiring the production of six additional units. Nowhere does Usher's allege that it fulfilled the design enhancements or design review requirements found in Phase II.
All of this begs the question of where plaintiffs' allege these contractual obligations on Boeing/MDC's part originated. Plaintiffs point to a letter from MDC to Usher's outlining a proposed three phase project to be completed in parts, with no part being discussed or agreed upon until successful completion of each preceding part. However, nowhere do they allege that there was any agreement as to the essential terms, mutual obligation or consideration. Rather, plaintiffs skip directly to the breach and ask for damages. For these reasons, the Court holds that Usher's and Deichmann have failed to allege an enforceable contract as to Phases II and III which could have been breached by defendant. Therefore, defendant's motion to dismiss Count II of the third amended complaint will be granted.

II. Declaratory Judgment Claim

As to plaintiffs' claim for declaratory judgment, the defendant argues that plaintiffs' have no standing to bring this claim before the Court. In order to have standing to sue for a declaratory judgment regarding the validity and enforceability of a patent, a plaintiff must plead that an actual case or controversy exists between the parties regarding the issue of the patent's validity and enforceability. See Cardinal Chem. Co. v. Morton Int'l Inc., 508 U.S. 83, 113 S.Ct. 1967, 1974, 124 L.Ed.2d 1 (1993). Advisory opinions are not permitted. See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed.Cir.1988). Whether an actual case or controversy exists upon particular facts is a question of law. See BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed.Cir.1993). The task of this Court is to look at the facts as pleaded and determine whether the elements of a case or controversy were present when the suit was filed. See BP Chems. Ltd. v. Union Carbide Corp., 757 F.Supp. 303, 304 (S.D.N.Y.1991), aff'd. 4 F.3d 975 (Fed.Cir. 1993).
*788 In stating a claim for declaratory judgment, plaintiffs must plead two elements to establish the existence of an actual case or controversy: First, the defendant's conduct must have "created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question...." Jervis B. Webb Co. v. Southern Sys., Inc., 742 F.2d 1388, 1398 (Fed.Cir.1984). Second, "plaintiff must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity." Jervis B. Webb Co., 742 F.2d at 1399.
Plaintiffs in this case have failed to allege either of the two elements necessary to establish a case or controversy. They have not alleged any threatened litigation by defendant against them, nor any grounds for a reasonable apprehension of such litigation. Nor have plaintiffs alleged any activity on their own part that would lead to such litigation. Rather, plaintiffs concede that no actual controversy exists at this time. Plaintiffs assert a novel construction of the declaratory judgment statute and inform the court that they have apprehension that at some point during discovery or trial in this case, a controversy may arise. That is not enough to establish a case or controversy, and therefore, defendant's motion to dismiss plaintiffs' declaratory judgment claim will be granted.

Conclusion
Based on the foregoing reasoning,
IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Counts II and IV of Plaintiffs' Third Amended Complaint is GRANTED.
Counts II and IV of Plaintiff's Third Amended Complaint are DISMISSED.
NOTES
[1] Usher's also alleges in Count I of the complaint that defendant breached this confidentiality agreement, but that count is not at issue in this motion to dismiss.
[2] The concept at issue in this lawsuit involves "the introduction of water in a radial direction inwardly into a cylindrical plenum chamber through a porous wall of permeable material and then allowing the water to exit from a knife-edged orifice in which the angle of the orifice is of the order of 30 degrees." Plaintiff's Third Amended Complaint, Factual Allegations ¶ 9. Apparently, this allows the production of a nozzle which can discharge water in a highly coherent stream. MDC sought this technology for use in ultrasonic inspection applications.
[3] "MDC (MCAIR) further breached the Prototype Construction Contract by entering into a Phase II Pilot Production Program and Phase III commercial Production without notifying Usher's or Ronald S. Deichmann, and without enetering [sic] into any discussions with Usher to supply the nozzles or `determine any licensing arrangements with Usher's for marketing the nozzles to other companies,' and disclosing said Phase I Confidential Development information to Defendant Boeing and other customers including, but not limited to, purchasers, licensees and leasees [sic] of ultrasonic equipment for testing aircraft and other parts." Plaintiff's Third Amended Complaint, Count II ¶ 3.