AIR–VEND, INC., Plaintiff,

v.

THORNE INDUSTRIES, INC. and Air-Ports Systems, Inc., Defendants.

Civ. No. 3–81–919.

United States District Court, D. Minnesota, Fourth Division.

Nov. 4, 1985.

James T. Nikolai, Haugen and Nikolai, and John F. Bonner, III, Bonner Law Offices, Minneapolis, Minn., for plaintiff AIR-vend, Inc.

Richard O. Bartz, and Robert W. Gutenkauf, Burd, Bartz & Gutenkauf, Minneapolis, Minn., for defendants Thorne Industries, Inc. and Air-Ports Systems, Inc.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

### INTRODUCTION

Plaintiff AIR-vend, Inc. (AIR-vend) commenced this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202 against defendants Thorne Industries, Inc. (Thorne Industries) and Air-Ports Systems, Inc. (Air-Ports Systems) on November 13, 1981. AIR-vend sought a declaration that United States Patent No. 4,289,225 (the '225 patent), which was issued to Owen R. Scholta and assigned to Thorne Industries and subsequently assigned to Air-Ports Systems, was not infringed, but rather invalid and unenforceable. On January 19, 1982, Thorne Industries and Air-Ports Systems jointly filed their Answer and Counterclaim in which they alleged the affirmative defenses of failure to state a claim and estoppel and alleged claims of infringement of the '225 patent, misappropriation of business property, such as trade secrets and confidential business information, conversion of business property, breach of contract, breach of fiduciary duty, usurpation of corporate opportunity, and unfair competition. On September 29, 1982, the court, pursuant to a Stipulation dated September 23, 1982 between counsel for the parties, dismissed with prejudice the affirmative defenses and counterclaim of Thorne Industries and Air-Ports Systems and found that AIR-vend had not infringed any of the claims of the '225 patent. The court further dismissed with prejudice all claims of AIR-vend "save and except for [AIR-vend's] Declaratory Judgment Claim that [Thorne Industries' and Air-Ports Systems' '225] patent is invalid and is unenforceable, said issues being the only issues remaining for litigation." On September 11, 1982, Thorne Industries and Air-Ports Systems filed a terminal disclaimer with the United States Patent Office abandoning any rights granted to them under Claims 1–6 of the '225 patent (PX 12).

A four day trial commenced before Judge Paul A. Magnuson on August 12, 1985. The court had jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. § 1338(a). The court heard and received evidence with respect to Claims 7 and 8 of the '225 patent. The patent issues at trial focused on whether Claims 7 and 8 of the '225 patent were invalid as anticipated under 35 U.S.C. § 102 or as obvious under 35 U.S.C. § 103. A subsidiary, yet threshold, issue at trial was whether an actual case or controversy existed for the court to adjudicate. This Memorandum and Order constitutes the findings of fact and conclusions of law of the court pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### CASE OR CONTROVERSY

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C. § 2201. In order to pursue a declaratory judgment action in federal court,

therefore, the court must have an independent basis of jurisdiction, which is undisputed to be 28 U.S.C. § 1338(a) in this case, and be presented with an actual case or controversy between the parties, which is disputed in this case. The actual controversy requirement of a declaratory judgment has been defined to be coextensive with the case or controversy requirement of Article III, Section 2 of the Constitution. *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). The case or controversy requirement in the context of a patent invalidity declaratory judgment action requires the presence of two elements. First, the defendant in such an action must have engaged in conduct that created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question. Second, the plaintiff seeking a declaration of invalidity must have actually produced the accused device or have actually prepared to produce such a device. *Jervis B. Webb Co. v. Southern Systems, Inc.,* 742 F.2d 1388, 1398–99 (Fed.Cir.1984). A case or controversy must exist as of the date of the filing of the declaratory judgment action, as well as at all stages of review. *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *See Jervis B. Webb Co. v. Southern Systems, Inc.,* 742 F.2d 1388, 1398 n. 6 (Fed.Cir.1984).

■ Without question, a case or controversy existed as of the date of the filing of this declaratory judgment action. In the Fall of 1981, Dave Bobert, the President of AIR-vend, received a letter dated October 30, 1981 (PX 18) from Richard Wilson, an attorney representing Thorne Industries and Air-Ports Systems, which raised the possibility of a patent infringement suit against AIR-vend. The letter discussed the belief of Thorne Industries that AIR-vend was producing and marketing equipment, including air compressors and dispensers or tire inflators, similar to patented equipment which Thorne Industries and Air-Ports Systems produced and marketed. The letter referred to the '225 patent and a

patent application, and the remedies available to Thorne Industries and Air-Ports Systems in a patent infringement suit. Also in the Fall of 1981, AIR-vend learned that Thorne Industries and Air-Ports Systems were threatening AIR-vend tire inflator customers with '225 patent infringement suits. As of the date of the filing of this declaratory judgment action, November 13, 1981, Thorne Industries and Air-Ports Systems clearly had engaged in conduct which created in AIR-vend, which was actually selling and producing the accused coin-operated tire inflators, a reasonable apprehension that it would face a patent infringement suit if it continued its tire inflator production and marketing activities. A case or controversy existed when this declaratory judgment action was commenced.

■ What brings the issue of a case or controversy to the fore is the Stipulation and Order Dismissing Defendants' Affirmative Defenses and Counterclaim With Prejudice dated September 29, 1982. The Stipulation and Order dismissed with prejudice the affirmative defenses of Thorne Industries and Air-Ports Systems and stated that AIR-vend did not infringe any of the claims of the '225 patent. The Stipulation and Order also dismissed with prejudice all claims of AIR-vend "save and except for [AIR-vend's] Declaratory Judgment Claim that [Thorne Industries' and Air-Ports Systems' '225] patent is invalid and is unenforceable, said issues being the only issues remaining for litigation." Thorne Industries and Air-Ports Systems contend that the Stipulation and Order effectively destroyed any case or controversy that may have existed between the parties. Thorne Industries and Air-Ports Systems contend that the dismissal with prejudice of all claims, except for the claim of AIR-vend for a declaration that the '225 patent is invalid, removes any apprehension that AIR-vend might have concerning the possibility of a patent infringement suit if it continued to produce and market coin-operated tire inflators. AIR-vend responds that the belated admission of Thorne Indus-

tries and Air-Ports Systems that it did not infringe the '225 patent on this occasion cannot destroy the case or controversy among the parties. AIR-vend expresses concern that if the '225 patent is not now declared invalid as requested, Thorne Industries and Air-Ports Systems will reenter the coin-operated tire inflator market and attempt to gain leverage among customers and competitors with an allegedly invalid patent. AIR-vend will once again be faced in its business decisions and dealings with the uncertain effect of an allegedly invalid patent in the hands of its competitors that have once before used the patent against AIR-vend.

Some four months before trial, the court considered this precise issue of a case or controversy upon the Motion to Dismiss of Thorne Industries and Air-Ports Systems. In an Order dated April 2, 1985, the court denied the Motion to Dismiss and found that an actual case or controversy existed for purposes of proceeding to trial on the issue of patent invalidity. The court, having completed a trial in this matter, remains satisfied that an actual case or controversy existed at all times in this declaratory judgment action. In finding that an actual case or controversy existed in this patent invalidity declaratory judgment action, the court has considered the requirements of *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1398 (Fed.Cir. 1984), against the background of *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), which provides that:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to war-

rant the issuance of a declaratory judgment.

*Id.* at 273, 61 S.Ct. at 512 (quoted with approval in *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969), and *Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)).

Furthermore, the court, in so finding, has made a pragmatic. judgment in the light of defendants' entire course of action and all of defendants' relevant conduct, and with the awareness of the business realities that are involved. *Sherwood Medical Industries, Inc. v. Deknatel, Inc.*, 512 F.2d 724, 728 (8th Cir.1975).

AIR-vend still has an apprehension that it will face a patent infringement suit in connection with the '225 patent if it continues or prepares to produce and market coin-operated tire inflators. This apprehension is reasonable based on the entire course of action and conduct of Thorne Industries and Air-Ports Systems, and the reality of the situation. Thorne Industries and Air-Ports Systems has once before threatened AIR-vend with a patent infringement suit in connection with the '225 patent and has actually commenced such a suit against AIR-vend in the counterclaim to this declaratory judgment action. That threat and lawsuit occurred at a time when Thorne Industries and Air-Ports Systems were marketing their coin-operated tire inflator with reference to and emphasis on the '225 patent. (*See, e.g.,* PX 29). Thorne Industries and Air-Ports Systems were using the '225 patent to gain leverage in the coin-operated tire inflator market. It was in these circumstances that the parties were able to agree that all claims against each other were to be dismissed with prejudice except for the claim of invalidity of the '225 patent which was to remain for trial on the merits. To make any sense of and give any meaning to this stipulation of the parties, it must be assumed that, while AIR-vend perhaps no longer feared the threat of patent infringement in this instance, AIR-vend still feared the threat of a patent infringement suit in connection

with other coin-operated tire inflators which it was producing or marketing, or intending to produce or market. If AIR-vend did not fear the threat of a future patent infringement suit, then why was the stipulation structured to preserve the patent invalidity claim? The likely future conduct of Thorne Industries and Air-Ports Systems suggests nothing to the contrary. Thorne Industries and Air-Ports Systems represented that, upon the release of Thomas Thorne from prison, the surviving or existing entity will again produce and market coin-operated tire inflators and will rely on the '225 patent in market advertising. The entire course of action and conduct of Thorne Industries and Air-Ports Systems supports the apprehension of AIR-vend of a possible infringement suit. Because AIR-vend has a reasonable apprehension that it will face a patent infringement suit if it produces and markets coin-operated tire inflators, an actual case or controversy of sufficient immediacy and reality exists between the parties to warrant the trial of this declaratory action.

The reality of the situation also supports the apprehension of AIR-vend. The reality of the situation is that Thorne Industries and Air-Ports Systems may well want to avoid litigating the validity of a particularly vulnerable patent. By dismissing any claims of infringement against AIR-vend, Thorne Industries and Air-Ports Systems may be attempting to insulate the '225 patent from any challenges. In this way the validity or invalidity of the '225 patent is never adjudicated, yet the '225 patent remains facially valid and an important marketing device for Thorne Industries and Air-Ports Systems. The reality of the situation, however, dictates that Thorne Industries and Air-Ports Systems should not be able, with a convenient and belated dismissal of an infringement claim, to avoid litigating the important issue of the validity of the '225 patent. Not to allow Thorne Industries and Air-Ports Systems to avoid litigating the validity of the '225 patent is also in the public interest in that it may result in the removal of an invalid patent from the public domain and that it may

promote, as is the purpose of any declaratory judgment action, the relatively speedy and inexpensive adjudication of a legal dispute without resort to coercive remedies. The reality of the situation requires the trial of this declaratory judgment action.

PATENT IN SUIT

The patent in suit is United States Patent No. 4,289,225 (PX 19) entitled "Air Compressor and Dispenser." Owen R. Scholta is the inventor of this air compressor and dispenser who assigned his interest in it to Thorne Industries which subsequently assigned its interest to Air-Ports Systems. The patent application was filed on March 12, 1979 and the '225 patent was issued on September 15, 1981. This air compressor and dispenser, which is more commonly known as a coin-operated tire inflator, is a vending machine designed to dispense compressed air for a specified period of time upon insertion of a coin. The coin-operated tire inflator consists of a box-like structure or housing made of a heavy gauge metal containing an electric motor, an air compressor, and a control mechanism. The electric motor, which is connected to an outside power source, drives the air compressor which provides compressed air through a flexible hose which hangs outside the housing. The air compressor is a rotating vane type pump which is positioned in the housing so that the inlet of the pump is in axial alignment with a central opening in the bottom wall of the housing. The control mechanism consists of a timer and switch box mounted on the side wall inside the housing. The control mechanism is connected to an external hand operated activator which includes a coin slot. The coin-operated tire inflator is activated upon insertion of a coin. Upon insertion of a coin and rotation of the activator, the timer is triggered which activates the switch to connect power to the electric motor for a predetermined period of time which drives the air compressor to deliver compressed air to the hose. The housing is intended to be secure and is equipped with locks on the hinged door of the housing. The coin-operated tire inflator may be

mounted on a fixed support or wall, as desired. The coin-operated tire inflator is designed for use in automobile service stations as a reliable source of compressed air.

The invention claimed in the '225 patent which is at issue in this trial is defined in Claims 7 and 8 as combined with Claim 1. The invention in issue is defined in the following claims:

1. An apparatus for compressing and dispensing compressed gas comprising:

a housing adapted to be secured to a support, said housing having a chamber, a doorway open to the chamber, door means movably mounted on the housing for closing the doorway, lock means cooperating with the door means for holding the door means in a closed position covering the doorway, holding the door means in a closed position covering the doorway,

an electric motor located in the housing chamber,

means mounting the motor on the housing,

gas compressor means located in the chamber and drivably connected to the motor,

said gas compressor means and said motor having communicating passages therethrough for directing cooling gas into proximity to said gas compressor means and said motor,

said gas compressor means having a guide for directing gas into said passages of the compressor means, and also having intake means for gas to be compressed open to said chamber,

said housing having a bottom wall, a gas inlet opening in said bottom wall located adjacent the guide for directing gas into the gas compressor means, said motor having gas impelling means for carrying cooling gas from the guide through the gas compressor and motor and discharging the gas therefrom into said chamber,

said gas in the chamber being drawn into the gas intake means on operation of said gas compressor means,

conduit means connected to the gas compressor means to carry compressed gas to a desired location externally of said housing,

control means located in the housing chamber operable to connect the motor to an electric power source whereby the motor operates the gas compressor means to compress gas and deliver gas to the desired location,

said control means including switch means and coin operated timer means to operate the switch means a limited period of time in response to actuation of the timer means with a coin, and means mounting the control means on the housing.

(PX 19, columns 4–5, lines 31–7).

7. The apparatus of claim 1 wherein said guide includes sleeve means carried by said compressor means and extending towards said housing bottom wall and into proximity to said wall gas inlet opening thereby to direct gas from said inlet opening through said sleeve means toward said passages of compressor means and motor.

(PX 19, column 6, lines 7–13).

8. The apparatus of claim 7 wherein said housing bottom wall gas inlet opening constitutes the only significant open access to said housing chamber when said door means is in closed position and said sleeve means is in closely spaced relation to said housing opening, thereby to preclude unauthorized access to said housing chamber.

(PX 19, column 6, lines 14–20).

Claims 7 and 8 are the only remaining claims of the '225 patent and both Claims 7 and 8 are in dispute here.

## VALIDITY OF THE '225 PATENT

*Presumption of Validity*

 In order to be patentable, an invention must satisfy three express statutory conditions: (1) utility (35 U.S.C. § 101); (2) novelty (35 U.S.C. § 102); and (3) nonobviousness (35 U.S.C. § 103). *Graham v. John Deere Co.*, 383 U.S. 1, 12, 86 S.Ct.

684, 691, 15 L.Ed.2d 545 (1966).[1] A patent once issued, however, is presumed valid and the burden of establishing that a patent is invalid rests on the party asserting such invalidity. 35 U.S.C. § 282. Section 282 "mandates not only a presumption shifting the burden of going forward in a purely procedural sense, but also places the burden of persuasion on the party who asserts that the patent is invalid." *Solder Removal Co. v. United States International Trade Commission*, 582 F.2d 628, 632 (C.C.P.A.1978) (footnote omitted). That burden, which always remains with the party asserting invalidity, is to persuade the court of invalidity by clear and convincing evidence. *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360 (Fed.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). In the end, the question is whether all the evidence establishes that the party asserting invalidity has so carried this burden as to have persuaded the court that the patent can no longer be accepted as valid. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed.Cir.1983).

### § 102

Section 102 provides in relevant part that:

> A person shall be entitled to a patent unless—
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States....

35 U.S.C. § 102.

A party asserting that a patent claim is anticipated under § 102 must establish that "each element of the claim in issue is found, either expressly described or under principles of inherency, in a single prior art reference, or that the claimed invention was previously known or embodied in a single prior art device or practice." *Kal-*

*man v. Kimberly-Clark Corp.*, 713 F.2d 760, 771 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). The anticipating reference need not "teach" what the patent in suit teaches. Rather, it is sufficient that the claim being challenged "read on" something disclosed in the reference, i.e., all limitations of the claim are found in the reference or are "fully met" by it. *Id.* at 772. The court, in considering anticipation, must first identify the elements of the claim in issue, determine the meaning of those elements in light of the specification and prosecution history, and identify corresponding elements disclosed in the allegedly anticipating reference. *Id.* at 771; *Lindemann Maschinenfabrik v. American Hoist and Derrick*, 730 F.2d 1452, 1458 (Fed.Cir. 1984).

When a party asserts that a prior use anticipates a patent claim under § 102(b), that party must also establish that such a use was of a complete invention, *i.e.*, conceived and reduced to practice, and public more than one year prior to the patent application date in the United States. *Coffin v. Ogden*, 85 U.S. (18 Wall.) 120, 124, 21 L.Ed. 821 (1873); *International Glass Company v. United States*, 408 F.2d 395, 402, 187 Ct.Cl. 376 (1969). Reduction to practice requires that an invention be sufficiently tested to demonstrate that it will work for its intended purpose. *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1444 (Fed.Cir.1984) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 838 (Fed.Cir.1984)). Reduction to practice does not require that the invention, when tested, be in a commercially satisfactory stage of development. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 838 (Fed.Cir.1984). To determine whether a public use has occurred requires consideration of all the circumstances surrounding the use. *TP Laboratories, Inc. v. Professional Posi-*

---

1. AIR-vend does not dispute the utility of the coin-operated tire inflator as defined in Claims 7 and 8 of the '225 patent. Rather, AIR-vend

challenges the novelty under § 102(b) and the nonobviousness under § 103 of the coin-operated tire inflator as defined in Claims 7 and 8.

*tioners, Inc.*, 724 F.2d 965, 971–72 (Fed. Cir.) *cert. denied,* —— U.S. ——, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984). Circumstances surrounding the use to be considered include whether payment is made for the device, whether a user agreed to use secretly, whether records were kept of progress, whether persons other than the inventor conducted tests or experiments, how many tests or experiments were conducted, and how long the testing period was in relationship to tests of other similar devices. *Id.* at 972. That a non-secret use of the device was made or that the device was not hidden from view is not *ipso facto* public use. *Id.*

When a party asserts that a prior sale or placing on sale anticipates a patent claim under § 102(b), that party must also establish that such a sale or placing on sale was of a complete invention, *i.e.,* conceived and reduced to practice, more than one year prior to the patent application date in the United States. Whether an invention has been placed on sale must be decided on the facts of each case in light of the policies underlying § 102(b). *Western Marine Electronics, Inc. v. Furono Electric Co., Ltd.,* 764 F.2d 840, 845 (Fed.Cir.1985); *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 860 (Fed.Cir.1985). The policies underlying § 102(b) include: (1) discouraging removal of inventions from the public domain which the public justifiably comes to believe are freely available; (2) favoring prompt and widespread disclosure of inventions to the public; (3) giving the inventor a reasonable amount of time (one year, by statute) following sales activity to determine whether a patent has value or is worthwhile; and (4) prohibiting attempts to exploit commercially an invention more than a year before the application is filed. *Id.* Consistent with these policies, the court should consider the totality of the circumstances relating to the character and extent of commercial activities, the type of invention and its stage of development as evidenced by engineering models, prototypes, and production models, and the character and extent of bona fide experimentation. *Id.*

■ Claim 7 of the '225 patent may be stated in terms of its elements as follows:

The apparatus of Claim 1 wherein said guide includes

sleeve means carried by said compressor means and

extending towards said housing bottom wall and

into proximity to said wall gas inlet opening

thereby to direct gas from said inlet opening through said sleeve means toward said passages of compressor means and motor.

Claim 7 contemplates an improvement to a coin-operated tire inflator which includes the extension of a guide or sleeve from the air compressor directed toward the bottom wall of the housing and positioned near the large air inlet in the bottom of the housing of the device of Claim 1. The sleeve serves to direct more efficiently outside air moving through the inlet in the bottom wall of the housing to the compressor and the motor to cool both the compressor and the motor. The sleeve also serves to minimize the recirculation of discharged hot air inside the housing through the compressor and the motor.

Claim 8 of the '225 patent may be stated in terms of its elements as follows:

The apparatus of Claim 7 wherein

said housing bottom wall gas inlet opening constitutes the only significant open access to said housing chamber when said door means is in closed position and

said sleeve means is in closely spaced relation to said housing opening,

thereby to preclude unauthorized access to said housing chamber.

Claim 8 contemplates an improvement to a coin-operated tire inflator that involves the sleeve means of Claim 7 being closely positioned to the inlet opening in the bottom wall of the housing which is the only significant open access to the housing when the housing door is closed. This improvement serves to prevent unauthorized access into the housing and reduce the cost of the

housing since additional holes, vents, and louvres are unnecessary.

AIR-vend contends that the '225 patent was anticipated under § 102(b) in that the '225 device was used or on sale and sold before March 12, 1978 which is more than one year prior to the patent application date in the United States of March 12, 1979. Specifically, AIR-vend contends that Vacuum Systems, Inc. (VSI) manufactured and sold the '225 device embodying Claims 7 and 8 in its Model 4110–C coin-operated tire inflator during the Summer and Fall of 1977.[2] VSI Model 4110–C, according to Owen Scholta,[3] was a coin-operated tire inflator which consisted of a metal housing with a hinged metal door and locking mechanism containing an air compressor and a coin-activated timer mechanism. The air compressor (See PX 24) which contained an electric motor, was manufactured by Thomas Industries, Inc. and was mounted to the bottom of the housing. The air compressor was mounted to the housing so that the compressor intake was aligned with and positioned close to the air vent in the side of the housing. The proximity of the compressor intake to the vent prevented unauthorized access into the housing. When in operation, the compressor would draw air through the vent to cool the compressor and the motor. At the bottom of the housing were three to five one-half inch drainage holes. Scholta provided a sketch (PX 27) of his recollection of the VSI Model 4110–C.

Scholta remembers that VSI sold approximately six to twelve Models 4110–C, as depicted in PX 27, in 1977. Scholta also remembers that Model 4110–C was touted in VSI promotional materials and flyers (See PX 17, p. 56), and actively shown at trade shows during 1977. William Traiser, who owned VSI from June 1977 until January 1978, remembers advertising and selling VSI Model 4110–C in 1977. Traiser remembers designing a brochure (PX 16) which included reference to Model 4110–C and writing the press release for "Super Service Station" magazine (PX 17, p. 56) in 1977. Traiser also remembers offering for sale Model 4110–C at trade shows in Chicago, New Orleans, Las Vegas, and Houston in 1977, and actually selling units in Houston and New Orleans. Neither Scholta nor Traiser offered contemporaneous documentation or records of sales, sketches, drawings, or photographs, other than the brochure (PX 16) and the magazine press release (PX 17), to provide details of the workings, designs, and sales of Model 4110–C.[4]

2. VSI is the predecessor company of Thorne Industries and Air-Ports Systems. Thomas Thorne purchased VSI from George Black in March 1978. Black had purchased VSI from William Traiser in January 1978. Traiser, in turn, had purchased Red-E-Vac Corporation, the predecessor company of VSI, from Ronald Shimek in June 1977. Throughout all these changes in ownership, at least one employee remained at the company, Owen Scholta, the inventor of the '225 device.

3. Owen Scholta, the inventor of the '225 device, went to work for Red-E-Vac Corporation while in high school in the Summer of 1975. At Red-E-Vac, Scholta assembled coin-operated vacuum cleaners, the only product of Red-E-Vac. He remained with the company as it experienced new owners, name changes, and additions to product line, including coin-operated tire inflators, until 1981. During this time, he performed various duties including purchasing parts and assembly and design of coin-operated tire inflators and vacuum cleaners. Scholta left Thorne Industries in March 1981 to join AIR-

vend. In May 1983, Scholta left AIR-vend and sold his interest in AIR-vend. Scholta is no longer associated with AIR-vend and is employed in a business unrelated to coin-operated tire inflators or vacuum cleaners.

4. AIR-vend offered mainly the unsupported oral testimony of Owen Scholta and William Traiser to show prior use or prior sale. While unsupported oral testimony can be sufficient to prove a prior use or prior sale, it must be "regarded with suspicion and subjected to close scrutiny." *E.I. Du Pont de Nemours v. Berkley & Co., Inc.*, 620 F.2d 1247, 1261 (8th Cir.1980). Factors to be considered in determining the sufficiency of oral testimony include: (1) the delay between the event and trial; (2) the interest of the witnesses; (3) contradiction or impeachment; (4) corroboration; (5) the witnesses' familiarity with details of the alleged prior device; (6) the improbability of prior use considering the state of the art; (7) the impact of the invention on the industry; and (8) the relationship between the witnesses and the alleged prior user. *Id.* at n. 20.

The court has considered VSI Model 4110–C and the use and sales of Model 4110–C in 1977 and finds that VSI Model 4110–C and its related use and sales do not anticipate Claims 7 or 8 of the '225 patent under § 102(b). While some elements of Claims 7 and 8 may be found in VSI Model 4110–C, not all elements of Claims 7 and 8 may be found in VSI Model 4110–C. Significantly, the sleeve means which Claim 7 requires on the air compressor cannot be found on the air compressor in Model 4110–C. The air compressor in Model 4110–C was a Thomas Industries air compressor (PX 24) which simply did not have a sleeve. Without the sleeve of Claim 7, Model 4110–C cannot direct as efficiently outside air moving through the vent to the compressor and the motor to cool both the compressor and the motor or minimize as effectively the recirculation of discharged hot air inside the housing through the compressor and the motor. Similarly, the gas inlet in the bottom wall of the housing which Claim 8 requires cannot be found in the housing of Model 4110–C. Without the inlet in the bottom wall of the housing of Claim 8, additional holes in the housing are required increasing the sites of potential unauthorized access to the inside of the housing and increasing the cost of producing the device. To the extent that essential elements of Claims 7 and 8 cannot be found in VSI Model 4110–C, VSI Model 4110–C cannot be said to anticipate Claims 7 or 8. AIR-vend has failed to persuade the court by clear and convincing evidence that the use or sale of VSI Model 4110–C was a prior use or sale anticipating Claims 7 and 8 of the '225 patent under § 102(b).

### § 103

Section 103 provides that:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

35 U.S.C. § 103.

The issue under § 103, therefore, is whether the invention as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made. Several basic factual inquiries must be made under § 103, including the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). Obviousness or nonobviousness is determined against the background of these factual inquiries. *Id.* Secondary considerations, such as commercial success, long felt but unsolved needs, and failure of others, may also have relevancy as indicia of obviousness or nonobviousness. *Id.* at 17–18, 86 S.Ct. at 693–94. When a patent is challenged on the ground that the claimed invention would have been obvious under § 103, all evidence relevant to the issue of obviousness must be considered. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed.Cir.1983) (citing *In re Sernaker*, 702 F.2d 989, 996 (Fed.Cir. 1983)).

The first factual inquiry to be made under § 103 is the scope and content of the prior art. "The scope of the prior art has been defined as that 'reasonably pertinent to the particular problem with which the inventor was involved'." *Id.* at 1535 (quoting *In re Wood*, 599 F.2d 1032, 1036 (C.C.P.A.1979)). Factors to be considered in determining the scope or relevance of the prior art include the type of skill required to understand the disclosure of the patent in suit, as well as the type of art which the PTO applied to the claims. *Orthopedic Equipment Co., Inc. v. United States*, 702 F.2d 1005, 1008 (Fed.Cir.1983).

The scope and content of the prior art in this case is determined in light of those references pertinent to the design and assembly of coin-operated tire inflators.

Such prior art would include the references which the PTO cited and applied in processing the application for the '225 patent. Prior art references which the PTO cited in connection with the '225 patent include:

U.S. Patent No.

| | | | |
|---|---|---|---|
| 1,156,078 | Holden | Air Vending Machine | PX 1 |
| 1,187,031 | Black | Air Compressor Automatically Controlled | PX 2 |
| 2,010,062 | Dawson | Pumping Mechanism | PX 3 |
| 2,042,510 | Cornelius | Motor Pump Unit Switch Operating | PX 4 |
| 2,228,894 | Hayes | Mechanism | PX 5 |
| 3,191,801 | Standish | Balloon Vending Machine Coin-Controlled Compressed | PX 6 |
| 3,208,574 | Anson | Air Dispenser | PX 7 |
| 3,761,203 | Niedhardt | Ring-Type Fan | PX 8 |

The scope and content of the prior art, as the references which the PTO cited and applied indicate, include machines, coin-operated and otherwise, which dispense compressed gas, such as air or oxygen, or fluids, and air compressors and related motors. Additional prior art would include those references introduced at trial. Prior art patents introduced at trial include:

U.S. Patent No.

| | | | |
|---|---|---|---|
| 3,289,801 | Jenkins | Gas Operated Coin Controlled Outdoor Grill | PX 9 |
| 3,292,821 | Cowley | Coin Operated Oxygen Dispenser | PX 10 |
| 691,747 | Champ | Tire Inflator | PX 11 |

Prior art devices referred to at trial include tire inflators Models 4110–C, 220–V, and 6330–C which VSI sold in 1977. Advertising and promotional material, such as brochures (PX 16) and press releases (PX 17), related to these devices were also prior art introduced at trial. Materials related to available air compressors and motors, such as compressors and motors from Thomas Industries (PX 24), Grainger's (PX 25), and Gast (PX 28), were also prior art references introduced at trial. These references, which include the patents which the PTO cited and applied in connection with the '225 patent (PX 1–8), the patents introduced at trial (PX 9–11), the devices which VSI sold in 1977 and related materials (PX 16 and 17), and the materials related to available air compressors and motors (PX 24, 25, and 28), reflect the scope and content of the prior art as it is pertinent to the coin-operated tire inflator involved in this case.

■ The second factual inquiry under § 103 is to ascertain the differences between the prior art and the claims at issue. Although findings on the differences between the prior art and the claims at issue are required under *Graham*, the issue under § 103 is not whether the differences themselves would have been obvious. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1537 (Fed.Cir.1983). Rather the consideration of differences, like each of the factual inquiries set forth in *Graham*, is but an aid in determining the issue of whether the claimed invention as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made. *Id.*

The prior art most pertinent to Claims 7 and 8 of the '225 patent includes the Holden (PX 1), Dawson (PX 3), Standish (PX 6), Anson (PX 7), and Cowley (PX 10) patents, and the VSI coin-operated tire inflators, such as Model 4110–C (PX 27), and discloses coin-operated dispensers of a compressed gas. While obvious differences exist between these prior art references and Claims 7 and 8 of the '225 patent, a few significant differences bear noting. For example, the Holden, Dawson, Standish, Anson, and Cowley devices differ from Claims 7 and 8 in that the compressors and motors or sources of compressed gas of these devices are mounted to the solid bottom wall of the metal housing or cabinet. Further, the Holden, Dawson, and Standish devices do not have a sleeve over the air inlet of the compressor and motor, nor do they closely align the inlet of the compressor and motor with a vent in the bottom wall of the housing. The VSI coin-operated tire inflators, while very similar to Claims 7 and 8 of the '225 patent, differ in that the compressor and motor are mounted to the bottom wall of the metal housing which has only four or five small holes for drainage purposes. The air inlet of the compressor and motor of the VSI device is aligned with a vent in the side wall of the housing. Additionally, the air inlet of the compressor of the VSI device, because it is a Thomas Industries compressor as opposed to a Gast

compressor as in the '225 patent device, is not fitted with a sleeve.

The third factual inquiry to be made is the level of ordinary skill in the art. Factors that may be considered in determining the level of ordinary skill in the art include: (1) the types of problems encountered in the art; (2) the prior art solutions to those problems; (3) the rapidity with which innovations are made; (4) the sophistication of the technology involved; (5) the educational background of those actively working in the field; and (6) the educational background of the inventor. *Orthopedic Equipment Co., Inc. v. United States,* 702 F.2d 1005, 1011 (Fed.Cir.1983) (quoting *Jacobson Brothers, Inc. v. United States,* 512 F.2d 1065, 1071, 206 Ct.Cl. 518 (1975)). Essential to this inquiry, however, is "adher[ence] to the statute, *i.e.,* to hold that an invention would or would not have been obvious, as a whole, when it was made, to a person of 'ordinary skill in the art'—not to the judge, or to a layman, or to those skilled in remote arts, or to geniuses in the art at hand." *Environmental Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 697 (Fed.Cir.1983) *cert. denied,* 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

The court has considered various factors, especially the sophistication of the technology involved and the educational background of the inventor, Owen Scholta, and others working in the field, in determining the level of ordinary skill in the art of coin-operated tire inflator design and assembly in 1979. The sophistication of the technology involved in coin-operated tire inflator design and assembly is not terribly great. Compressors, electric motors, pumps, and coin mechanisms comprise the technology of coin-operated tire inflators and are rather simple, straightforward mechanical devices in this usage. Consistent with the simplicity and straightforwardness of this technology is the level of sophistication and education of the inventor of the '225 device. Scholta was a 21 year old high school graduate with a few years of junior college training when he invented the '225 device in 1979. He had a basic understanding, mostly through experience, of the operation of compressors, electric motors, pumps, and coin mechanisms. Neither Scholta's level of sophistication nor level of education were particularly high. Given the rather low level of sophistication of technology and education, a person of ordinary skill in the art of coin-operated tire inflator design and assembly in 1979 would not be unlike Owen Scholta and would be a high school graduate, or have the experiencial equivalent, and have a working knowledge and understanding of compressors, electric motors, pumps, and coin mechanisms.

Secondary considerations, such as commercial success, long felt need, failure of others, copying, and widespread recognition of the significance of the invention in the industry, are relevant indicia of obviousness or nonobviousness, and must be considered when present. *Simmons Fastener Corp. v. Illinois Tool Works,* 739 F.2d 1573, 1575 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538–39 (Fed. Cir.1983). Objective evidence of nonobviousness, or the *Graham* indicia, "may in a given case be entitled to more weight or less, depending on its nature and its relationship to the merits of the invention. It may be the most pertinent, probative, and revealing evidence available" on the issue of obviousness. *W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1555 (Fed.Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). A nexus between the merits of the claimed invention and the evidence of secondary considerations, however, is required in order for the evidence to be given substantial weight in determining the issue of obviousness. *Simmons Fastener Corp. v. Illinois Tool Works,* 739 F.2d 1573, 1575 (Fed.Cir. 1984); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1539 (Fed.Cir.1983). The claimed "commercial success must be shown to have in some way been due to the nature of the claimed invention, as opposed to other economic and commercial factors

unrelated to the technical quality of the patented subject matter." *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1027 (Fed.Cir.1985).

■■■ Secondary considerations raised in the evidence at trial included only commercial success. Thorne Industries and Air-Ports Systems offered the testimony of their president, Thomas Thorne, on the issue of commercial success. His testimony, however, provided little assistance on the issue of commercial success since it was rather sketchy and without corroboration. Thorne testified that Thorne Industries manufactured and sold tire inflators as described in the '225 patent in 1979, 1980, and 1981. Thorne recalled that Thorne Industries sold possibly 500 such units in 1979, 1500 units in 1980, and an unknown number of units in 1981. Thorne thought total sales in the years 1979–84 amounted to $3.7 million, with $150,000 of that amount representing sales of vacuum cleaners. Neither Thorne nor any other witness offered testimony with respect to the relationship between the commercial success of the Thorne Industries coin-operated tire inflator and the invention claimed in Claims 7 and 8 of the '225 patent. In the absence of any corroborating evidence of sales and any evidence establishing a nexus between the invention of Claims 7 and 8 of the '225 patent and the commercial success of the Thorne Industries and Air-Ports Systems coin-operated tire inflator, the court can give little weight to the evidence of commercial success as it relates to the issue of obviousness.

■■■ The question of obviousness, as the Court of Appeals for the Federal Circuit has acknowledged, is simple to ask, but difficult to answer. *Orthopedic Equipment Co., Inc. v. United States,* 702 F.2d 1005, 1012 (Fed.Cir.1983). The difficulty in answering this question is due in no small part to the strong temptation to resort to and rely on hindsight in formulating the answer. Hindsight, however, is quite improper when resolving the question of obviousness. To use the patent in suit as a guide through the prior art references,

combining the right references in the right way to arrive at the result of the claims in suit, is, therefore, also quite improper. *Id.* Combining the teachings of the prior art to produce the claimed invention, absent some teaching, suggestion or incentive supporting the combination, cannot establish obviousness. *ACS Hospital Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1577 (Fed.Cir.1984). "The suggestion to modify the art to produce the claimed invention need not be expressly stated in one or all of the references to show obviousness. 'Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art'" at the time the invention was made. *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1025 (Fed.Cir.1985) (quoting *In re Keller,* 642 F.2d 413, 425 (C.C.P.A.1981)).

The court has attempted to make the basic factual inquiries under § 103, as *Graham* requires, and to examine the results of those inquiries. The court has also examined the evidence of secondary considerations, such as commercial success. Upon full consideration of all the evidence, the court finds that the invention of Claims 7 and 8 of the '225 patent would have been obvious to a person having ordinary skill in the art at the time the invention was made. The prior art references, especially the VSI coin-operated tire inflators, such as Model 4110–C, and the Gast compressors, combined would clearly have suggested the invention of Claims 7 and 8 to a person of ordinary skill in the art. The evidence of secondary considerations, which only related to commercial success, was rather lacking and worthy of little weight on the issue of obviousness. AIR-vend has persuaded the court by clear and convincing evidence that the invention of Claims 7 and 8 of the '225 patent would have been obvious to a person having ordinary skill in the art at the time the invention was made.

The court makes this finding of obviousness based on what the combined teachings of the prior art references, especially VSI Model 4110–C and the Gast compressor,

would have suggested to a person of ordinary skill in the art. Particularly helpful in determining what the prior art references would have suggested to a person of ordinary skill was the testimony of Scholta, the inventor of the '225 patent. Scholta's testimony revealed that the invention of Claims 7 and 8 was not so much a stroke of genius as a function of practicality. While a device which is a function of practicality may be the quintessential invention and nonobvious, the device of Claims 7 and 8 is not. Scholta testified that the major difference between the VSI Model 4110–C which he built in 1977 and the device of Claims 7 and 8 which he built in 1979 is the difference between the Thomas Industries compressor and the Gast compressor. The Thomas Industries compressor did not have a sleeve over the air inlet, was mounted to the bottom of VSI Model 4110–C, and vented through the side wall of the device. The Gast compressor did have a sleeve over the air inlet, was mounted to the side of the '225 device, and vented through the bottom well of the device. These differences do not point to nonobviousness, however, when viewed in light of Scholta's testimony that the vent in the bottom wall of the '225 device is a function of the Gast compressor is a function of the size of the housing. That is, the invention of Claims 7 and 8 came to be because Scholta was trying in 1979 to fit a Gast compressor, which happened to have a sleeve over the air inlet, into an existing housing. The Gast compressor could fit in the existing housing only if it were mounted to the side wall and vented necessarily through the bottom wall. Had Scholta been provided with a Gast compressor, instead of a Thomas Industries compressor, in 1977 he would have come up with the same configuration of Claims 7 and 8. Scholta stated as much when he recalled that he had thought about turning, and believes he did turn in some isolated machines, the Thomas Industries compressor 90° and vent it through a hole in the bottom wall. That Scholta did not use a Gast compressor in 1977 will not save Claims 7 and 8 from being obvious because a person of ordinary skill in the art may be assumed to have the Gast compressor since it was prior art. Under the circumstances involving the prior art, technology, and level of skill, as evidenced in the testimony of Scholta, the invention of Claims 7 and 8 of the '225 patent would have been obvious to a person of ordinary skill in the art of coin-operated tire inflators at the time the invention was made in 1979.[5]

The question remaining is whether all the evidence establishes that AIR-vend has so carried its burden as to have persuaded the court that Claims 7 and 8 of the '225 patent can no longer be accepted as valid. The court is satisfied that AIR-vend has carried its burden and has persuaded the court by clear and convincing evidence that Claims 7 and 8 are invalid as obvious under 35 U.S.C. § 103.

Accordingly, IT IS ORDERED that:

1. Thorne Industries, Inc. was the original owner by assignment and Air-Ports Systems, Inc. was the subsequent owner by assignment of United States Patent No. 4,289,225.

2. United States Patent No. 4,289,225 is invalid and unenforceable as obvious under 35 U.S.C. § 103.

3. Each party is to bear its own attorneys' fees.

---

**5.** Thorne Industries and Air-Ports Systems offered the testimony of Robert Albertson with respect to obviousness. Albertson was proferred as an expert in the art of coin-operated tire inflators. The court believes, however, that Albertson was somewhat less than an expert and, in fact, doubts that Albertson was qualified as a person of ordinary skill in the art of coin-operated tire inflators at the time of the invention of Claims 7 and 8 of the '225 patent in 1979.

Even if Albertson were qualified as a person of ordinary skill in the art, his testimony was neither credible nor reliable given his rather perfunctory review and analysis of the prior art and his previous business dealings with both Thorne Industries and its counsel. Even if Albertson were qualified and credible, his testimony provided little, if any, assistance on the issue of obviousness.